IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BELL SPORTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, <br><br> Defendants. | Case No. <br><br> Judge |

**DECLARATION OF TINA M. BONDY**

I, Tina M. Bondy, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am the Assistant Secretary of BELL SPORTS, INC. ("BELL SPORTS, INC.") and am knowledgeable about or have access to business records concerning all aspects of the brand protection operation of BELL SPORTS, INC. including, but not limited to, its trademarks, other intellectual property, sales, on-line sales, advertising, marketing, media coverage and associated international operations. I make this declaration from matters within my own knowledge, except where otherwise stated.

3. Plaintiff, BELL SPORTS, INC., acts as the sales, marketing, design and distribution arm of GIRO products worldwide.

1

4. BELL SPORTS, INC. is in the business of developing, marketing, selling and distributing GIRO products. BELL SPORTS, INC. sells high end sports apparel and helmets under its GIRO brand for cyclists, skiers and snowboarders. Giro Sport Design was founded in 1985 and its success prompted its acquisition by Bell Sports in 1996. Giro Sport Design is a leader in the design, fit and engineering of innovative products that complement the body and enhance the rider's experience. BELL SPORTS, INC. is the official source of GIRO products:

https://www.giro.com/c/sport/



5. BELL SPORTS, INC. is the owner of the Trademark Registration Nos. 1,416,726; 3,722,128; 3,756,412 and 5,691,857 for the "GIRO" word mark in international classes 9 and 25 and No. 5,001,981 for the "G" design and word and design mark in international classes 9 and 25 (collectively, the "GIRO Trademarks"). The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the above GIRO Trademarks are attached hereto as Exhibit 1.

6. The GIRO Trademarks are distinctive and identify the merchandise as goods from BELL SPORTS, INC.

7. The GIRO Trademarks have been continuously used and never abandoned.

8. BELL SPORTS, INC. has expended substantial time, money and other resources in developing, advertising and otherwise promoting the GIRO Trademarks. As a result, products associated with the GIRO Trademarks are recognized and exclusively associated by consumers, the public and the trade as being products sourced from BELL SPORTS, INC.

9. The success of the GIRO brand has resulted in its significant counterfeiting. Consequently, BELL SPORTS, INC. is implementing an anti-counterfeiting program and is investigating suspicious websites and online marketplace listings identified through external vendors in proactive Internet sweeps. BELL SPORTS, INC. has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms such as iOffer, AliExpress, Alipay, Alibaba, PayPal, eBay, Amazon, DHgate, Joom, Walmart and Temu, including the fully interactive commercial Internet stores operating under the Defendant Online Marketplace Accounts identified in Schedule A which is attached to the Complaint (collectively, the "Defendant Internet Stores"), which were offering for sale, selling and importing counterfeit products in connection with counterfeit versions of BELL SPORTS, INC.'s federally registered GIRO Trademarks (the "Counterfeit GIRO Products") to consumers in this Judicial District and throughout the United States. Despite BELL SPORTS, INC.'s enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores.

10. We perform, supervise and/or direct investigations related to Internet-based infringement of the GIRO Trademarks. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit GIRO Products from foreign countries such as China to consumers in the U.S. and elsewhere. We, or someone working under our direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit GIRO Products were being offered for sale to the United States, including Illinois. This conclusion was reached through visual inspection of the products

3

listed for sale on the website, the price at which the Counterfeit GIRO Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the United States, including Illinois, and because Defendants and their websites do not conduct business with BELL SPORTS, INC. and do not have the right or authority to use the GIRO Trademarks for any reason. True and correct copies of screenshot printouts showing the active Defendant Internet Stores reviewed are attached as Exhibit 2.

11. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers selling genuine GIRO Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and AliExpress, Alipay, Alibaba, PayPal, eBay, Amazon, DHgate, Joom, Walmart and Temu. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard® and PayPal® logos. BELL SPORTS, INC. has not licensed or authorized Defendants to use its GIRO Trademarks, and none of the Defendants are authorized retailers of genuine GIRO Products.

12. Upon information and belief, Defendants also deceive unknowing consumers by using the GIRO Trademarks without authorization within the content, text, and/or meta tags of their web sites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for GIRO Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant

4

search results and misdirect consumers searching for genuine GIRO Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results after others are shut down.

13. Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant online marketplace accounts often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

14. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts. In addition, Counterfeit GIRO Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit GIRO Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same online marketplace account registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HADJL user- defined variables, domain redirection, lack of contact information, identically or similarly priced similar hosting services, similar name servers, and the use of the same text and images.

15. In addition to operating under multiple fictitious names, Defendants in this

case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

16. Counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as accounts behind layers of payment gateways so that they can continue operation in spite of BELL SPORTS, INC.'s enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their AliExpress, Alipay, Alibaba, PayPal, eBay, Amazon, DHgate, Joom, Walmart and Temu accounts to off-shore bank accounts outside the jurisdiction of this Court.

17. Monetary damages alone cannot adequately compensate BELL SPORTS, INC. for ongoing infringement because monetary damages fail to address the loss of control of and damage to BELL SPORTS, INC.'s reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to BELL SPORTS, INC.'s reputation and goodwill by acts of infringement.

18. BELL SPORTS, INC.'s goodwill and reputation are irreparably damaged when the GIRO Trademarks are used on goods not authorized, produced, or manufactured by BELL SPORTS, INC. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to BELL SPORTS, INC.'s reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely

unquantifiable.

19. BELL SPORTS, INC. is further irreparably harmed by the unauthorized use of the GIRO Trademarks because counterfeiters take away BELL SPORTS, INC.'s ability to control the nature and quality of products used with the GIRO Trademarks. Loss of quality control over goods using the GIRO Trademarks and, in turn, loss of control over our reputation is neither calculable nor precisely compensable. The sale of Counterfeit GIRO Products using the GIRO Trademarks also causes consumer confusion, which weakens BELL SPORTS, INC.'s brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit GIRO Products they have purchased originated from BELL SPORTS, INC. will come to believe that BELL SPORTS, INC. offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine GIRO Products, resulting in a loss or undermining of BELL SPORTS, INC.'s reputation and goodwill. Counterfeit BELL SPORTS, INC. Products, primarily coming from China, can be extremely dangerous and present alarming safety hazards to children.

20. BELL SPORTS, INC. is further irreparably damaged due to a loss in exclusivity. The GIRO Products are meant to be exclusive. BELL SPORTS, INC.'s extensive marketing and distribution of GIRO Products are aimed at growing and sustaining sales of GIRO Products. The GIRO Trademarks are distinctive and signify to consumers that the products originate from BELL SPORTS, INC. and are manufactured to BELL SPORTS, INC.'s high quality standards. When counterfeiters use the GIRO Trademarks on goods without BELL SPORTS, INC.'s authorization, the exclusivity of BELL SPORTS, INC.'s products, as well as BELL SPORTS, INC.'s reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

21. BELL SPORTS, INC. will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule

of Civil Procedure 65(b)(1).

     I declare under penalty of perjury that the foregoing is true and correct. Executed on   July 1, 2025.

                                                      /s/ _Tina M. Bondy_____